IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 21-cr-28-APM |
| | : | |
| v. | : | |
| | : | |
| ROBERTO MINUTA (11), | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT ROBERTO MINUTA'S
MOTION TO DISMISS OR EXCLUDE EVIDENCE**

Roberto Minuta moved to dismiss the "case against him," arguing that the government violated his constitutional rights when an off duty special agent of the Federal Bureau of Investigation ("FBI"), through happenchance, encountered the defendant at his tattoo shop in New York. Alternatively, the defendant moved for an evidentiary hearing and ruling to exclude from trial evidence from this encounter. The government did not violate the defendant's constitutional rights, did not collect any evidence stemming from this encounter, derivative or otherwise, and does not intend to introduce the agent or any of the defendant's statements from the encounter. The Court should deny the defendant's motion.

**FACTUAL BACKGROUND**

On Saturday, July 17, 2021, a Special Agent of the FBI from the Washington Field Office ("WFO") was off duty and visited Newburgh, New York for personal reasons. The agent has been involved in the FBI's investigative response to January 6 but is not involved in the investigation underlying this prosecution. One of the agent's friends with whom he was visiting scheduled a tattoo appointment for their group of friends at Casa Di Dolore Tattoo Parlor in Newburgh, owned and operated by the defendant.

At around 12:00 PM, the agent and his group drove to the tattoo shop, where the defendant was present and working. Until that moment, the agent had never heard of Roberto Minuta. At some point during the encounter, and without any prompting from the FBI agent or his companions, the defendant began to discuss his pending charges in this case. This was the first time the agent learned that the tattoo shop owner was a charged defendant in the investigation into January 6. The agent did not identify himself as an FBI agent, did not elicit any information regarding the defendant's actions underlying the charges, and did not instruct any members of the agent's group to elicit information. At no point during this encounter did the defendant provide any information about any conversations he had with his attorney or any advice given to him by his attorney. And the defendant's statements about his conduct amounted to mostly generalized denials that, as he noted on July 17, he had already told the FBI after being arrested. Throughout the encounter, the agent asked only whether the defendant's charges included conspiracy charges, to which the defendant answered yes.

At the end of the encounter, the agent and his group departed the tattoo shop, and the agent documented the event later that evening in notes. Immediately upon returning to work at WFO, on Monday, July 19, the agent explained what had occurred to a supervisor and memorialized his encounter with the defendant in an official FBI report known as an "FBI-302." The prosecution team on this matter was subsequently apprised of the encounter. On August 6, the government disclosed the agent's FBI-302 to the defense, which the defendant filed on the public docket as an attachment to his motion. ECF No. 404.

The government has not developed any investigative leads or evidence as a result of the July 17 encounter between the agent and the defendant; the agent is not a member of the investigative team, will not be added to the investigative team, and will not be consulted except as

necessary to litigate this motion. The defendant was charged by criminal complaint on February 24, 2021, and indicted for the first time on March 31, 2021, months before the encounter. A substantial majority of the evidence the government will use at trial to prove the defendant's guilt was developed before July 17. Any leads and evidence developed after that date are independent of the July 17 encounter.

## ARGUMENT

### I.   LEGAL STANDARD

The defendant moved to dismiss the case against him and, in the alternative, to exclude from trial any evidence from the agent's encounter with the defendant on July 17.[1] The Sixth Amendment assures the accused 'the assistance of counsel for his defense.'" U.S. const. amend VI. "A corollary thereto prohibits the Government from using against a defendant 'at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after [a formal charge had been filed] and in the absence of his counsel." *United States v. Watson*, 894 F.2d 1345, 1347 (D.C. Cir. 1990) (alteration in original) (citing *Massiah v. United States*, 377 U.S. 201, 206 (1964)).

---

[1] The defendant's two-page motion also appears to claim without argument that the government violated his Fifth Amendment rights. *See* ECF No. 389 at Introduction Paragraph and ¶ 4. The defendant was not in custody on July 17, 2021, nor does the defendant allege that law enforcement engaged in any interrogation or that the defendant was compelled to provide any testimony. Taken as a whole, the government understands the defendant's motion to argue the agent's encounter with a represented defendant amounted to a *Massiah* violation. *See Massiah v. United States*, 377 U.S. 201, 206 (1964). According to *United States v. Henry*, "the *Massiah* holding rests squarely on interference with [the defendant's] right to counsel" pursuant to the Sixth Amendment. 447 U.S. 264, 270 (1980).

## II.     THE GOVERNMENT DID NOT VIOLATE THE DEFENDANT'S CONSTITUTIONAL RIGHTS

The agent's encounter with the defendant on July 17, 2021, did not run afoul of the defendant's constitutional rights. Under *Massiah*, the operative question is whether the agent "deliberately elicited" incriminating information from the defendant. The agent did not.

The Supreme Court has "consistently applied the deliberate-elicitation standard in … Sixth Amendment cases." *Fellers v. United States*, 540 U.S. 519, 524 (2004) (citing *United States v. Henry*, 447 U.S. 264, 270 (1980) ("The question here is whether under the facts of this case a Government agent 'deliberately elicited' incriminating statements ... within the meaning of *Massiah*.")); *Brewer v. Williams*, 430 U.S. 387, 399 (1977) (finding a Sixth Amendment violation where a detective "deliberately and designedly set out to elicit information from [the suspect]")). Here, an FBI agent unknowingly found himself in a tattoo parlor owned by a January 6 defendant who started talking about his pending case. The agent did nothing "deliberately" or "designedly."

Examples of when the Supreme Court has found deliberate elicitation highlight just how far the agent's conduct falls short of this standard. In *Massiah*, law enforcement equipped a codefendant with a radio and tasked him with surreptitiously meeting the defendant and discussing the case while the agents listened remotely. *See* 377 U.S. at 202-03. Similarly, in *Henry*, law enforcement paid an informant to engage with the detained defendant as a fellow inmate with an instruction not to initiate conversation about the defendant's conduct. *See* 447 U.S. at 266-67. In *Brewer*, a detective, while transporting the defendant from arraignment to jail, denied the attorney permission to join and leaned on "psychology" and the defendant's religious beliefs to convince the defendant to share where the victim's body was located. *See* 430 U.S. at 392-93, 399. In these cases and others, the Court concentrated on law enforcement's planned actions aimed at drawing out incriminating information from a charged, represented defendant. Put differently, the Court

4

looked to the officer's mindset.  Further, each officer was responsible for eliciting information from the defendant, either directly by talking to the defendant about his conduct or indirectly by tasking another individual to do so.

Neither of those circumstances occurred here.  The encounter here was not planned—it was happenchance.  The agent, who is not even part of the team assigned to investigate this matter, did not know the defendant at all, and certainly did not know he was a charged, represented defendant until after the defendant volunteered that information himself—blunting any argument the agent acted "deliberately and designedly" to acquire incriminating information.  And, even after learning these facts, the agent only asked if the defendant was charged with conspiracy and did not task any of his colleagues to talk with or ask questions of the defendant.  An FBI agent happening into a tattoo parlor owned by a defendant unknown to him does not qualify as the sort of premeditated, organized law enforcement action that violates the Sixth Amendment.  Indeed, wereas in *Henry*, "the 'constable' planned an impermissible interference with the right to the assistance to counsel," here, at worst, "the constable blundered"—which does not seriously implicate, much less violate, the Sixth Amendment.  447 U.S. at 274-75 (citing *People v. DeFore*, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926)).

### III. NEITHER DISMISSAL OF THE INDICTMENT NOR AN EVIDENTIARY HEARING IS WARRANTED

Even assuming the agent's conduct constituted a Sixth Amendment violation under *Massiah*, the Supreme Court has rejected the defendant's proposed remedy of dismissal as "drastic" and "plainly inappropriate." *United States v. Morrison*, 449 U.S. 361, 366-67 (1981).  In *Morrison*, the Court faced nearly an identical request as this Court now faces: law enforcement met and spoke with the charged defendant without counsel, and the defendant moved before trial to dismiss the indictment with prejudice. *See id*. at 362-63.  The Court rejected the defendant's

request.  "Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," including "the necessity of preserving society's interest in the administration of criminal justice."  *Id.* at 364.  The defendant's motion contained no allegation that the claimed violation had prejudiced her legal representation, nor did it allege that the violation had strengthened the prosecution's case against her or have any other adverse impact on her legal position.  *See id.* at 363.  The simple fact that the interference had occurred was insufficient to warrant interfering with the criminal proceedings against her at all, "much less the drastic relief" of dismissal.  *See id.* at 366-67.

Here, the defendant's motion suffers from the same fatal omissions.  There is no claim that the agent's conduct will result in continuing prejudice moving forward either in the form of impaired legal representation or an unfair advantage to the government.  In fact, the defendant's motion fails to articulate how the defendant's comments are "incriminating," as were the statements in *Massiah*, and the government would contend that they were not.  In any event, the government has already stated that it has no intent of introducing at trial any statements made during this encounter and communicated as much to the defendant upon producing these materials.  *See Massiah*, 377 U.S. at 207 ("All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against him at his trial.").  Further, no other evidence or investigative leads arose from the agent's encounter with the defendant: he was arrested months before the July encounter, much of the government's evidence against him originated before the encounter, and nothing the government has collected since the encounter stems in any way from the defendant's statements that day.  *See Morrison*, 449 U.S. at 365 n.2

("Indeed, there being no claim of any discernible taint, even the traditional remedies were beside the point."). In fact, as documented in the agent's FBI-302, *see* ECF No. 404, the defendant himself noted on July 17 that everything he was saying that day was information he had already told the FBI in a post-arrest statement. Ultimately, the defendant's motion seeks relief based on a conclusory claim of interference, unaccompanied by any allegation of adverse effect, and it should be denied. *Morrison*, 449 U.S. at 363. No evidentiary hearing or suppression, let alone dismissal, is warranted.

## CONCLUSION

The government respectfully submits that the defendant's motion to dismiss the case as to defendant Roberto Minuta or conduct an evidentiary hearing and exclude certain evidence should be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By: _____
Troy A. Edwards, Jr.
Assistant United States Attorney
N.Y. Bar No. 5453741
Ahmed M. Baset
Louis Manzo
Jeffrey S. Nestler
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
troy.edwards@usdoj.gov
202-252-7081

*/s/ Alexandra Hughes*
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
